UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AUDIA N. KEENAN,

      Plaintiff,

v.                                        Case No: 8:15-cv-913-T-36TBM

AMERICAN SECURITY INSURANCE
COMPANY,

      Defendant.

_____/

## **O R D E R**

This matter comes before the Court upon the Defendant's Motion to Compel Appraisal and to Stay Proceedings (Doc. 5), Plaintiff's response thereto (Doc. 8), and Defendant's Reply (Doc. 11). The Court, having considered the motion and being fully advised in the premises, will grant in part and deny in part Defendant's Motion to Compel Appraisal and to Stay Proceedings.

## I.    **Background**

On April 29, 2011, Defendant American Security Insurance Company ("American Security) issued a Residential Property Additional Insured Endorsement with attached forms and endorsements (collectively, the "Policy") under Plaintiff's lender's Mortgage Service Program, pursuant to which American Security insured certain improvements located at 6919 Williams Drive, Tampa, Florida 33634 (the "Property"). *See* Doc. 2-1. The Policy provided dwelling coverage in the amount of $229,800.00. Plaintiff's lender, Wells Fargo Bank, NA, its successors or assigns, was the "Named Insured--Mortgagee" and Plaintiff Audia N. Keenan was the "Additional Insured." *See id.*

Keenan alleges that the Property suffered sinkhole damage on May 1, 2011. Doc. 2 ¶ 5. On November 5, 2012, Keenan, by and through his counsel, The Thompson Law Group, P.A., reported

a potential sinkhole claim at the Property. American Security then retained Central Florida Testing Laboratories, Inc. ("CFTL") to perform a geotechnical investigation to determine whether sinkhole activity could be verified as a contributing cause of the reported damage at the Property. *See* Doc. 2 ¶ 11; Doc. 8-1. On March 27, 2013, CFTL issued its report (the "CFTL Report") in which CFTL opined that, within a reasonable professional probability, sinkhole activity could not be eliminated as a cause of loss at the Property. *See* Doc. 2 ¶ 12; Doc. 5-2.

In a letter to Plaintiff's counsel dated April 23, 2013, American Security accepted coverage of the claim and tendered payment of $857.44 for the cash value of the cosmetic damages, minus depreciation and deductible. Doc. 8-1 at p. 2. Defendant also advised Plaintiff of his right to participate in a neutral evaluation process pursuant to Fla. Stat. § 627.7074(3). *Id.* at p. 3. In December of 2014, the parties did, in fact, engage in the neutral evaluation process outlined in Fla. Stat. § 627.7074. *See* Doc. 5-4. On January 23, 2015, Defendant agreed to comply with the recommendations in the neutral evaluator's report. *See id.* at p. 2.

On March 12, 2015, Plaintiff filed the instant action in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida alleging, *inter alia,* breach of contract. Doc. 1 ¶1; Doc. 2. On or about April, 17, 2015 Defendant removed the action to this Court alleging diversity jurisdiction under 28 U.S.C. § 1332. Doc. 1 at p. 1. On April 29, 2015, Defendant filed the instant motion to compel appraisal and stay this action pending said appraisal. *See* Doc. 5.

## II.   Discussion

Defendant seeks an appraisal pursuant to the appraisal clause of the insurance policy at issue here, which states:

> Appraisal. If the Named Insured and we fail to agree on the actual cash value or amount of loss, either party may make written demand for an appraisal. Each party will select an appraiser and notify the other of the appraiser's identity within 20 days after the demand is

2

received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, the Named Insured or we can ask a judge of a court of record in the state of the Described Location to select an umpire. The appraisers will appraise the loss, based on the method of payments specified in the policy for each item.

If the appraisers submit a written report of an agreement to us, that amount will be the actual cash value or amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award by any two will determine the amount of loss. Each party will pay the appraiser it chooses and his expenses, and equally pay expenses for the umpire and all other expenses of the appraisal.

Doc. 5-1 at p. 8.

Plaintiff argues that Defendant has waived its opportunity to obtain an appraisal because it already participated in the neutral evaluation process. *See* Doc. 8. However, this argument is directly contradicted by Fla. Stat. § 627.7074(3), which provides that "[n]eutral evaluation supersedes the alternative dispute resolution process under Fla. Stat. § 627.7015 but does not invalidate the appraisal clause of the insurance policy." To avoid this contradiction, Plaintiff argues that the current version of the statute is not applicable to this action. Plaintiff claims instead that the version of the statute in effect on the date of the loss – allegedly May 1, 2011 – should control.

"'[T]he statute in effect at the time an insurance contract is executed governs substantive issues arising in connection with that contract.'" *Menendez v. Progressive Express Ins. Co., Inc.,* 35 So. 3d 873, 876 (Fla. 2010) (quoting *Hassen v. State Farm Mut. Auto. Ins. Co.,* 674 So. 2d 106, 108 (Fla. 1996)). However, procedural issues are governed by the laws in effect at the time the issues arise, for example, at the time suit is filed or at trial. *See generally Alamo Rent-A-Car, Inc. v. Mancusi,* 632 So. 2d 1352, 1358 (Fla. 1994)

*Citizens Prop. Ins. Corp. v. Trapeo,* 136 So. 3d 670, 675 (Fla. 2d DCA 2014).

"Section 627.7074 is titled 'Alternative procedure for resolution of disputed sinkhole insurance claims.' The statute defines and establishes the right to neutral evaluation along with the procedures for neutral evaluation." *Trapeo,* 136 So. 3d at 673-674. "Section 627.7074 was enacted

3

in 2006 and substantially amended in 2011." *Trapeo,* 136 So. 3d at 675. The current version of this statute took effect on May 17, 2011. *Id.* The prior version of Fla. Stat. § 627.7074(3) was identical to the current version except that it did not include the following language: "but does not invalidate the appraisal clause of the insurance policy."

Essentially, the Plaintiff suggests that, without this specific language, the prior statute *did* invalidate appraisal clauses of insurance policies. Plaintiff has cited no authority to support this suggestion and the Court can find no basis to support a holding that the statute would invalidate a contractual provision by implication when there is no direct conflict between the statute and the contractual provision. Therefore, regardless of which version of section 627.7074(3) applies here, the contractual provision providing for appraisal remains valid and enforceable.

Plaintiff also argues that, by exercising its option to repair Plaintiff's dwelling, the Defendant has waived the appraisal clause. Plaintiff relies on *Weiss v. Ins. Co. of Pa.,* 497 So. 2d 285 (Fla. 3d DCA 1986) for this argument. However, *Weiss* is easily distinguished from the instant case because in *Weiss* the repairs had already been done – making appraisal impossible. *Id.* at 285. Here, there is no indication that any repairs to the Property have been undertaken.

In a footnote, Plaintiff cites cases holding that an insurer's decision to repair the insured property creates a new contract which is binding on the insurer. Doc. 8 at p. 8, n2 (citing *Drew v. Mobile USA Ins. Co.,* 920 So. 2d 832 (Fla. 4th DCA 2006); *Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*, 527 F. Supp. 2d 1355 (M.D. Fla. 2007)). Again, these cases are distinguishable. Here, American Security actually proposed a new contract for the repair of the property which Plaintiff declined or failed to execute. Furthermore, the cases cited do not suggest that the "new contract" to make repairs invalidates or supersedes the terms of the original insurance policy. Finally, those cases involve disputes that were not subject to the sinkhole statutes at issue here.

In fact, appraisal is entirely appropriate here given that this dispute involves only the amount of the insurer's liability. "'[W]hen the insurer admits that there is a covered loss, any dispute on the amount of loss suffered is appropriate for appraisal.'" *Fla. Ins. Guar. Ass'n v. Lustre,* Case No. 2D13-5780, 2015 Fla. App. LEXIS 6026, 9-10 (Fla. 2d DCA Apr. 24, 2015) (quoting *Cincinnati Insurance Co. v. Cannon Ranch Partners, Inc.,* Case No. 2D14-827, 40 Fla. L. Weekly D78 (Fla. 2d DCA Dec. 31, 2014)). Accordingly, the appraisal requested by Defendant is both mandated by the insurance policy and appropriate under the facts of the case.

Defendant also requests that this action be stayed pending the appraisal. However, this Court disfavors indeterminate stays. Thus, the Court will stay the action until fifteen days following the appraisal, but for no more than six months. Defendant will be required to file a status report on the first business day of each of the next six months indicating the status of the appraisal process. Accordingly, it is

**ORDERED** that:

1.      Defendant's Motion to Compel Appraisal and to Stay Proceedings (Doc. 5) is GRANTED in part and DENIED in part;

2.      The parties shall cooperate in expeditiously obtaining an appraisal in the manner proscribed by the appraisal clause of the subject insurance policy;

3.      This action is STAYED until the earlier of fifteen days following the appraisal or six months from the date of this Order; and

4.      Defendant shall file a status report on the first business day of each of the next six calendar months indicating the status of the appraisal process.

**DONE AND ORDERED** in Tampa, Florida on July 24, 2015.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any